## Lindberg *v.* Mifflin Township, Appellant.

*Negligence—Road law—Townships—Embankment beside road—Absence of barrier—Stumbling horse—Fall over embankment—Contract with boulevard company—Liability to repair—Primary liability.*

1. Those in control of public roads are charged with the duty of taking reasonable care to erect proper barriers at dangerous places to guard against injuries which may arise from the well-known habits of horses.

2. The fact that the supervisors of a township have authorized a boulevard company to use a township road as part of its boulevard does not relieve the township from its primary liability to keep the road in a reasonably safe condition for public travel.

3. In an action against a township to recover damages for personal injuries, the case is for the jury and a verdict for the plaintiff will be sustained where it appears that while plaintiff was driving a team along a road in the defendant township one of the horses stumbled and pulled its mate and the wagon over an unguarded and steep embankment directly on the side of the road, precipitating the plaintiff thereover; that the bed of the highway was occupied by two street car tracks, leaving but three or four inches between the outside rail and the edge of the road; that plaintiff was driving slowly down grade with a good hold on the lines and his foot on the brake; that the horse was gentle and not in the habit of stumbling; that the driver was on the proper side of the road according to the direction in which he was going, and testified that he considered it unsafe at that particular place to drive on the other side owing to the fact that at any time a car was liable to come down toward him on that track around a sharp curve seventy feet beyond the point of the accident; that the exact cause for the stumble of the horse did not appear other than that there was some break or unevenness in the surface of the road.

Argued Oct. 21, 1914. Appeal, No. 143, Oct. T., 1914, by defendant, from judgment of C. P. Allegheny Co., July T., 1912, No. 2153, on verdict for plaintiff in case

of John E. Lindberg v. Mifflin Township.  Before FELL,
C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER,
JJ.  Affirmed.

Trespass to recover damages for personal injuries.
Before FRAZER, P. J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $5,500 and judgment thereon.
Defendant appealed.

*Error assigned* was in refusing to direct a verdict for
and in refusing to enter judgment for defendant non ob-
stante veredicto.

*John Braden McAdoo,* for appellant.

*Meredith R. Marshall,* with him *Rody P. Marshall,* for
appellee.—The proximate cause of plaintiff's injury was
the lack of a guardrail: Burrell Twp. v. Uncapher, 117
Pa. 353; Boone v. Township of East Norwegian, 192 Pa.
206; Davis v. Snyder Twp., 196 Pa. 273; Hey v. Phila-
delphia, 81 Pa. 44; Kitchen v. Union Twp., 171 Pa. 145;
Hamil v. Christiana Boro., 49 Superior Ct. 371.

A township cannot relieve itself of liability to care
for its road by surrendering it to a boulevard company:
Act of June 26, 1895, P. L. 382; Harvey v. Chester, 211
Pa. 563; Norbeck v. Philadelphia, 224 Pa. 30; Hancock
v. Borough of Wyoming, 148 Pa. 638; Cooke & Wakeley
v. Deerfield Twp., 64 Pa. 445.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2,
1915:

On the morning of May 14, 1912, while the plaintiff
was driving a team, hauling an ordinary load of house-
hold goods, one of the horses stumbled and pulled its
mate and the wagon over an unguarded embankment,
directly at the side of the road.  The bed of the highway
was occupied by two street car tracks, leaving but a

small space of from three to four inches between the outside rail and the edge of the road. The plaintiff was driving down a 5.9 grade, at a slow walk, with "a good, tight hold" on the lines and his foot on the brake; the horse was gentle and not in the habit of stumbling; the driver was on the proper side of the road according to the direction in which he was going, and he testified that he considered it unsafe at that particular place to drive on the other, or inside, track, owing to the fact that, at any time, a car was likely to come toward him on that track, around a sharp curve about seventy feet beyond the point of the accident. The exact cause for the stumble of the horse does not appear, although there was some testimony of a break, or unevenness, in the surface of the road. When the plaintiff went over the embankment he was precipitated about one hundred and twenty-five feet to the bottom of a hill, and suffered severe injuries. He recovered a verdict, upon which judgment was entered; the defendant has appealed, and contends (1) that the township was not guilty of negligence, (2) that the plaintiff was guilty of contributory negligence, (3) that the stumble of the horse, and not the absence of the guard rail, was the proximate cause of the accident, and (4) that the defendant was not liable in law, for a duly incorporated boulevard company was in possession of the highway, under an agreement with the township.

It is well known that at times all horses will stumble, that when they stumble they are likely to fall, and when down they will probably struggle in their attempts to get up; and those in control of public roads are charged with the duty of taking reasonable care to erect appropriate barriers at dangerous places to guard against injuries which may arise from the well-known habits of horses. Under the facts at bar, the jury was justified in concluding that one exercising reasonable care should have known that a guard rail was required at the place in question, and that the absence of an appropriate bar-

rier might well lead to just such an accident as occurred in this case.

The Act of June 26, 1895, P. L. 382, authorizes companies incorporated thereunder to build boulevards not exceeding one hundred feet in width—"at least fifty feet of such width to be a good, compact, driving road, of which thirty feet......shall be constructed of stone, gravel, or other proper and convenient material." The road upon which the accident happened presented none of these characteristics, and in dealing with the question of the responsibility of the defendant township, notwithstanding the fact that it had entered into a contract with a boulevard company concerning this road, the court below states: "The testimony showed that previous to 1898 an old, narrow, and very little travelled public road ran along the side of the hill......, known as the Bench Road. While the testimony failed to show just when the road was laid out and opened, it did appear that the supervisors of the township for some years previous to 1897 did repair work upon it. There was also testimony of an indefinite character that in April, 1898, the supervisors......gave their consent in writing to the......Boulevard Company.......to construct a boulevard over and upon a portion of the old Bench Road, and that under this permission the boulevard company took possession of about sixty per cent. of the old road, widened the portion taken, laid down upon it a double street car track, and paved with brick 16½ feet of the road bed. At the place of the accident......, which was on a part of the old road, the road as improved by the boulevard company was 23 feet in width, four feet of which was between the paved portion and the edge of the embankment over which plaintiff was thrown. Defendant contended that it was not liable in this case, because of the agreement between its supervisors and the boulevard company under which the boulevard company had possession of the road at the point of the accident. ......Upon examination of the paper, we find that on

April 6th, 1898, the four supervisors of the defendant township gave their consent to the Monongahela Boulevard Company 'to construct according to its plans, and operate its highway over and upon so much of the township road as is included in the route of its road,' the boulevard company to charge no tolls and to maintain at its own expense the portion of the township road occupied by the boulevard. The agreement further provides that Mifflin Township 'should not be liable for damages from any change of grade or any other act or thing done by the said Monongahela Boulevard Company on said township road.' While the act of assembly which provides for the incorporation of boulevard companies vests such companies with the right of eminent domain, and also the right to lease or purchase turnpikes and plank roads, we find no authority given those corporations to take over township roads, nor have we been referred to any law that authorizes townships to surrender public roads to boulevard companies. Assuming, however, for the purpose of this case, that the supervisors of defendant township had authority to authorize the boulevard company to use the township road as part of its boulevard, such action would not, in our opinion, relieve the township from its primary liability to keep the road in reasonably safe condition for public travel. The duty to keep the road reasonably safe for travel being upon the township, whether or not that duty was fulfilled was for the jury, without regard to the agreement between the supervisors and the boulevard company."

The foregoing excerpt from the opinion of the court below presents a correct view of the law upon the branch of the case there discussed, and sufficiently disposes of the chief of the appellant's contentions; as already indicated, we see no merit in its other contentions. The present case, like all others of its kind, depends upon its own facts, hence the citation or discussion of authorities would serve no useful purpose; we have examined all of

those cited, however, and do not see that any of them controls here.

The assignments of error are overruled, and the judgment is affirmed.